

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00846-CV

Nori Alvarez **BAKER**,
Appellant

v.

**ORANGE PANDA, LLC** and Diana Webb,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI08249
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: October 28, 2020

REVERSED AND RENDERED IN PART, AFFIRMED AND REMANDED IN PART

Nori Alvarez Baker appeals the denial of her motion to dismiss filed pursuant to the Texas Citizens Participation Act ("TCPA"). Baker, who is the defendant in the underlying defamation suit, argues the trial court should have granted her dismissal motion because the plaintiff, Diana Webb, failed to establish a prima facie case as to her defamation claims. Additionally, Baker argues the trial court should have granted her dismissal motion because she established the defense of substantial truth. We conclude the trial court erred by denying the motion to dismiss as to four

defamation claims, but correctly denied the motion to dismiss as to six defamation claims. We reverse and render in part, affirm in part, and remand to the trial court for further proceedings.

## BACKGROUND

The underlying defamation suit is one facet of the litigation pending between the parties. We provide only the factual and procedural background necessary to dispose of the issues presented in this appeal.

Baker agreed to buy a business, the "Mind, Body, and Soul Spa," from Orange Panda, LLC. Orange Panda's corporate representative is Webb. In accordance with the parties' agreement, Baker took over the spa's operation before the sale was finalized. Several months later, Orange Panda sued Baker, asserting breach of contract, conversion, and other claims. In response, Baker filed a third-party petition against Webb, asserting fraud, negligent misrepresentation, and other claims. The litigation was automatically stayed when Baker filed for bankruptcy. The bankruptcy stay was eventually lifted to allow Webb to pursue defamation claims against Baker. Webb filed the underlying defamation suit against Baker.

In her live pleadings, Webb alleged that Baker made ten defamatory statements: (1) Webb had "operat[ed] the spa illegally and [this] was the reason [] Baker could not pay for spa equipment;" (2) a "[s]pa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom;" (3) "Webb did not obtain her Moringa[1] from India as advertised but bought it from the Texas grocery store HEB;" (4) "Webb was using doctors with licenses that were revoked;" (5) "Webb was operating the spa without doctors;" (6) "Webb was selling tap water as alkaline water;" (7) "Webb is being sued by two physicians;" (8) "Webb is a racist;" (9) "Webb abuses 'street[]

---

[1]The dictionary defines "Moringa" as "a genus of East Indian and African trees constituting the family Moringaceae and having pinnate leaves and irregular flowers with 10 stamens and a 3-valved capsular fruit." *See* https://www.merriam-webster.com/dictionary/Moringa.

drugs;'" and (10) "Webb is a thief." Webb further alleged that "all these statements that [Baker] made were false;" that although she had been convicted of a felony twenty-five years ago "there was no use of drugs or thieving;" that she had "traveled to India to purchase the Moringa;" that "the water she sold as alkaline water was obtained separately and not just from the tap;" that she had "never been sued by physicians regarding spa work or any other thing;" and that she "had a medical director, Dr. Yuri Sless M[.]D[.], with a medical license."

Baker moved to dismiss Webb's defamation claims, asserting that (1) the TCPA applied because Webb's defamation claims were based on, related to, or were in response to Baker's exercise of free speech; (2) Webb could not establish by clear and specific evidence a prima facie case as to every element of her defamation claims; and (3) even if Webb could establish a prima facie case as to every element of her defamation claims, Baker could establish valid defenses to the defamation claims.

Webb filed a response to the motion to dismiss, arguing that she could establish by clear and specific evidence a prima facie case for each element of her defamation claims. Webb submitted documents in support of her response, including her own affidavit and the affidavit of Dr. Gary S. Deegear.

The trial court held a hearing on the motion to dismiss. At the hearing, Baker objected to Webb's evidence; however, the trial court did not rule on Baker's evidentiary objections. At the end of the hearing, the trial court took the motion to dismiss under advisement. When the trial court did not issue a ruling by the thirtieth day after the hearing, the motion to dismiss was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.005(a), 27.008(a). Baker appealed.

**DISMISSAL UNDER THE TCPA**

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584

(Tex. 2015). "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Id*. at 589. Therefore, when a plaintiff brings a claim that infringes on a defendant's right to speak on a matter of public concern, the TCPA authorizes a defendant to file a motion to dismiss. *See KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 (Tex. 2016); *In re Lipsky*, 460 S.W.3d at 584.

The TCPA's dismissal procedure involves a burden-shifting framework.[2] *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 602-03 (Tex. App.—San Antonio 2018, pet. denied). The initial burden is on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's "legal action is based on, relates to, or is in response to the [defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see In re Lipsky*, 460 S.W.3d at 586. "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). This initial step is commonly referred to as establishing the applicability of the TCPA. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015) (recognizing that after the defendants "successfully demonstrated the applicability of the [TCPA]" the court of appeals must consider whether the plaintiff "met the prima facie burden the [TCPA] requires.").

If the defendant meets her initial burden, then the burden shifts to the plaintiff-nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c); *In re Lipsky*, 460 S.W.3d at 587.

---

[2]In 2019, the Legislature amended the TCPA, but the former version of the statute remained in effect for suits filed prior to September 1, 2019. Because Webb's defamation suit was filed on March 22, 2019, it is governed by the law in existence prior to the 2019 amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1-12, 2019 Tex. Gen. Laws 684, 684-87. Therefore, we apply the former version of the TCPA and our citations are to the statute as it existed prior to September 1, 2019.

A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. A prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.*

In deciding whether a plaintiff satisfied her burden to establish a prima facie case, courts consider the pleadings as well as the supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE § 27.006(a). "In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence." *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied); *see Carter v. Ball*, No. 04-19-00194-CV, 2019 WL 5030227, at *1 n.1 (Tex. App.—San Antonio Oct. 9, 2019, no pet.) (noting that while the TCPA requires the trial court to consider pleadings and supporting and opposing affidavits, "it does not expressly prohibit the consideration of additional evidence."). Courts review the pleadings and evidence in the light most favorable to the plaintiff-nonmovant. *Elkins*, 553 S.W.3d at 603.

If the plaintiff establishes by clear and specific evidence a prima facie case for each essential element of her claim, then the burden shifts back to the defendant to establish, by a preponderance of the evidence, a valid defense to the claim. "[T]he court shall dismiss a legal action against the moving party if [she] establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim[s]." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

### STANDARD OF REVIEW

We review the denial of a motion to dismiss under the TCPA de novo. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Elkins*, 553 S.W.3d at 603. In our review, we must "consider the pleadings and supporting and opposing affidavits stating the facts

on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a); *see Elkins*, 553 S.W.3d at 603. We view the pleadings and evidence in the light most favorable to the nonmovant. *Elkins*, 553 S.W.3d at 603.

## APPLICABILITY OF THE TCPA

In her motion to dismiss, Baker argued the TCPA applied to Webb's defamation claims because these claims were "premised solely on Baker's exercise of free speech." Baker further argued that "communications regarding suspected bad actions regarding services in the marketplace, like medical spas, constitute a matter of public concern." Webb did not dispute that the TCPA applied to her defamation claims.

Under the TCPA's burden-shifting framework, the initial burden was on Baker to show "by a preponderance of the evidence" that Webb's defamation claims were based on, related to, or were in response to Baker's exercise of the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *In re Lipsky*, 460 S.W.3d at 586. The "right to free speech" refers to communications related to "a matter of public concern," which is defined to include issues related to "health or safety" or "a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(3),(7)(A),(E). "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Adams*, 547 S.W.3d at 897 (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

Here, Webb's live pleadings alleged that Baker made various statements about the way in which Webb had operated the spa, including statements that the spa had employed doctors who were not licensed, that Webb had operated the spa without doctors at all, and that Webb had defrauded spa customers by misleading them about the products sold to them. The alleged statements obviously concern "health or safety" and "a good, product, or service in the marketplace" and, as a result, qualify as "communications" regarding "a matter of public concern."

Webb's live pleadings demonstrate that her defamation claims were based on, related to, or were in response to Baker's exercise of the right to free speech. *See id*. (concluding TCPA applicability was established when "a review of the pleadings and the record demonstrate[d] that [] alleged defamatory communications relate[d] to [] services in the marketplace and to the community and economic well-being" of a subdivision). Therefore, Baker met her initial burden to show the applicability of the TCPA to Webb's defamation claims.

## PRIMA FACIE CASE

Because Baker met her initial burden to show the applicability of the TCPA, the burden shifted to Webb to establish "by clear and specific evidence a prima facie case for each essential element" of her claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *In re Lipsky*, 460 S.W.3d at 587. Establishing by clear and specific evidence a prima facie case for each essential element of a claim "describes the clarity and detail required to avoid dismissal." *In re Lipsky*, 460 S.W.3d at 590. "A prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id*. It is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. In the context of the TCPA, the word "clear" means "unambiguous," "sure," or "free from doubt," and the word "specific" means "explicit" or "relating to a particular named thing." *Id*.

"[P]leadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." *Id*. "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for [her] claim." *Id*. at 590-91. However, the Texas Supreme Court has instructed that "pleadings and evidence that establish[] the facts of when, where, and what was said, the defamatory nature of the statements,

and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id*. at 591.

Defamation has been defined as "the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). A plaintiff claiming defamation must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault regarding the truth of the statement, and (4) the statement caused damages, unless the statement was defamatory per se. *Exxon Mobile Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017); *In re Lipsky*, 460 S.W.3d at 593. Defamation per se refers to statements that are so obviously harmful that general damages are presumed to flow from the nature of the defamation itself. *In re Lipsky*, 460 S.W.3d at 593. Thus, when a statement is defamatory per se, damages are presumed. *See id*.

On appeal, Baker argues the trial court should have granted her motion to dismiss because Webb failed to establish a prima facie case as to elements one (publication of a false statement) and four (damages) of her defamation claims. Baker does not argue that Webb failed to establish a prima facie case as to elements two (defamatory nature of the statements) and three (requisite degree of fault) of her defamation claims. Because Baker does not challenge elements two and three on appeal, the issue of whether or not Webb met her burden to establish a prima facie case as to these two elements is not before us, and we do not address these two elements in this opinion. *See Comal Ag Operations, LLC v. Kelley*, No. 04-17-00692-CV, 2018 WL 842753, at *2 (Tex. App.—San Antonio Feb. 14, 2018, pet. denied) (addressing only the challenge raised in the appellant's brief regarding the trial court's finding that the appellees had established a valid defense under the TCPA).

### *Evidentiary Complaints*

We first address Baker's evidentiary complaints. Baker contends that the trial court could not have considered certain evidence in determining if Webb met her burden to establish a prima facie case of defamation.

The evidence Webb submitted in response to the motion to dismiss included her own affidavit and other documents. The documents attached to Webb's affidavit consisted of: (1) an affidavit from Gary S. Deegear, M.D.; (2) a letter from G. Richard Keene; (3) a statement by Shaun Lewis; (4) an email from Susan T. Davidson; and (5) a letter from Christina Alanis. Later, Webb supplemented this evidence with a letter she wrote to one of the spa's doctors, Dr. Yuri Sless.

Baker filed written objections to Webb's TCPA evidence in the trial court. Baker objected to Webb's affidavit on grounds that it was "false, self-serving, [and] conclusory," and argued the "entire affidavit should not be considered because it contain[ed] . . . false statements made under oath." Baker also objected to the documents attached to Webb's affidavit on grounds they were "impermissibl[e] hearsay" and "self-serving." At the hearing on the motion to dismiss, Baker presented her evidentiary objections, but she did not obtain a ruling on them.

### *"Conclusively False" Statements—Webb's Affidavit*

On appeal, Baker contends Webb's affidavit could not be considered in its entirety because it contained two "conclusively false" statements: a statement that Webb had never been convicted of a crime of moral turpitude, and a statement that Webb was defamed by Baker telling customers and investors that she was a "criminal." Generally, "[t]o preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling." *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007); *see Sprute v. Levey*, No. 04-14-00358-CV, 2015 WL 4638298, at *6 (Tex. App—San Antonio Jul. 15, 2015, no pet.); TEX. R. APP. P. 33.1(a). Baker argues that her evidentiary objections were preserved without a

ruling by the trial court because Webb's motion to dismiss was denied by operation of law. *See* TEX. R. APP. P. 33.1(b) (stating the overruling by operation of law of a motion for new trial or a motion to modify the judgment generally preserves for appellate review complaints made in these motions). We reject this argument. By its express language, Rule 33.1(b) only applies to complaints raised in a motion for new trial or a motion to modify the judgment; it does not apply to motions to dismiss under the TCPA. *See id.*

Here, Baker was required to preserve her complaint that Webb's entire affidavit could not be considered because it was "conclusively false" by obtaining a ruling on her objection.[3] *See* TEX. R. APP. P. 33.1(a); *Robins v. Clinkenbeard*, No. 01-19-00059-CV, 2020 WL 237943, at \*10 (Tex. App.—Houston [1st Dist.] Jan. 16, 2020, no pet.) (holding the appellant's objection regarding the lack of expert witness testimony in a TCPA case was waived because the record did not show the trial court ruled on it). Because Baker failed to obtain a ruling on her objection, she failed to preserve this complaint for appellate review.

*Speculation and Hearsay—Parts of Webb's Affidavit and Other Documents*

Baker contends that parts of Webb's affidavit could not be considered because they contain "speculation[] and hearsay," and that all of the documents attached to Webb's affidavit could not be considered because they are hearsay. Again, Baker was required to preserve these complaints for our review by obtaining rulings on her objections from the trial court. *See* TEX. R. APP. P. 33.1(a); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at \*9 n.4 (Tex. App.—San Antonio 2019, no pet.) (recognizing when parties in a TCPA case "did not obtain a [trial court] ruling on their 'hearsay and speculation' objections to several paragraphs in [a] declaration" "no

---

[3]Even if we were to consider the merits of this complaint, we would overrule it because "[w]e are not aware of any authority allowing us to negate an entire affidavit because some percentage of its individual statements have been stricken." *See MVS Int'l Corp. v. Int'l Advert. Solutions, LLC*, 545 S.W.3d 180, 191 (Tex. App.—El Paso 2017, no pet.).

error was preserved for review."); *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding TCPA movant waived a hearsay objection to opponent's evidence by not obtaining a ruling from the trial court). Because Baker's complaints that parts of Webb's affidavit contain "speculation[] and hearsay" and that the documents attached to her affidavit are hearsay were not properly preserved, they present nothing for appellate review.

*Conclusory Statements—Webb's Affidavit*

Baker also argues that Webb's affidavit could not be considered because it is conclusory. Under the TCPA, conclusory statements are not probative evidence and are not sufficient to establish a prima facie case. *See In re Lipsky*, 460 S.W.3d at 592 (stating that "[b]are, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."). In challenging an affidavit because it is conclusory, an appellant must identify the statements she contends are conclusory. *Robins*, 2020 WL 237943, at *8; *see* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). A failure to identify the allegedly conclusory statement constitutes briefing waiver and presents nothing for appellate review. *Robins*, 2020 WL 237943, at *8; *see* TEX. R. APP. P. 38.1(i).

In her appellate brief, Baker identifies two statements in Webb's affidavit that she contends are conclusory: (1) "'Baker defamed me by …' (conclusory);" and (2) "[t]here were [a] number [of] May 18, 2018 defamations which occurred at the store during business hours, near a weight burning machine salesman, spa personnel, and customers, which is a conclusory statement…." To determine if these statements are conclusory, we consider them in context. The pertinent part of Webb's affidavit states:

*Baker defamed me by* telling my customers and investors that I was [] dishonest, fraudulent, or criminal in the following manners:

*There were [a] number [of] May 18, 2018 defamations which occurred at the store during business hours, near a weight burning machine salesman, spa personnel, and customers.* Ms. Baker claimed the following to a spa salesperson and clientele:

Webb was operating the spa illegally for years and was the reason that [] Baker could not pay for spa equipment. Diana Webb had a criminal record. A spa doctor had a revoked medical license.

(Emphasis added). When properly considered in context, it is apparent that the statements in question are not "bare, baseless opinions" but part of the factual assertions made in Webb's affidavit. We conclude the statements identified in Baker's briefing are not conclusory and the trial court did not err in considering these statements.

*Personal Knowledge—Part of Webb's Affidavit*

Baker further argues that the trial court could not have considered the part of Webb's affidavit stating that some of the statements were made at the spa on May 18, 2018, to a salesman, spa personnel, and customers because it is not based on Webb's personal knowledge.[4] However, the same information appears in Webb's live pleadings. Additionally, similar evidence appears in other documents produced by Webb. First, Dr. Gary S. Deegear testified by affidavit that Baker told him "in the presence of many clients and potential clients" that Webb "[o]perated a spa with medical consultants who had their licenses 'revoked.'" Second, Shaun Lewis provided in his statement: "Baker advised me on May 18, 2018, that I could not be paid for the month of April [] 2018, because [] Webb had been operating illegally for years" and that "retired physician, Dr. Gary Deegear, who provided technical assistance to [] Webb and her company[,] had a 'revoked' medical license."

---

[4]Baker did not present this complaint in the trial court; however, we assume, without deciding, that Baker may raise this complaint for the first time on appeal.

Any error in considering evidence is harmless when the same or similar evidence is produced elsewhere. *See Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984) ("The general rule is that error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection."); *In re D.M.L.*, 04-12-00297-CV, 2012 WL 5354927, at *4 (Tex. App.—San Antonio Oct. 31, 2012, no pet.) ("Any error in the admission of evidence is harmless where the same evidence comes in elsewhere without objection."). Here, because the same or similar evidence appears elsewhere in the record, any error in considering this part of Webb's affidavit was harmless.

### Element One: Publication of a False Statement of Fact to a Third Party

As to the first element of defamation, the publication of a false statement of fact to a third party, Baker argues on appeal that Webb failed to establish by clear and specific evidence a prima facie case as to publication and the falsity of the statements.

#### 1. Publication

"'Publication' occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Rincones*, 520 S.W.3d at 579 (internal quotations omitted). "Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise." *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied.). As a result, we determine if Webb provided a prima facie case as to each statement alleged in her live pleadings. To determine if Webb met her burden to establish a prima facie case as to this element of defamation, we review her live pleadings and the relevant evidence in a light favorable to Webb. *See Elkins*, 553 S.W.3d at 603; TEX. CIV. PRAC. & REM. CODE § 27.006(a).

In her live pleadings, Webb alleged that she "agreed to sell her spa business" to Baker, who "was not able to keep the business successful, and almost on acquisition, began disparaging and defaming" Webb "at the spa for reasons unknown." Webb further alleged that "[t]he defamatory statements were numerous and false, and include the following May 18, 2018 statements which occurred at the spa in front of a weight burning machine salesman, spa personnel, and customers." Specifically, Webb alleged that Baker stated that "Webb was operating the spa illegally for years and was the reason [] Baker could not pay for spa equipment" and that a "[s]pa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom." Webb further alleged that "during the end of April 2018," Baker "was telling spa clients (through texts and in person) and personnel" that: "Webb did not obtain her Moringa from India as advertised but [] bought it from the [] grocery store;" that "Webb was using doctors with licenses that were revoked;" that "Webb was operating the spa without doctors;" that "Webb was selling tap water as alkaline water;" that "Webb is being sued by two physicians;" that "Webb is a racist;" that "Webb abuses 'street drugs;'" and that "Webb is a thief."

Webb's evidence included her own affidavit and the affidavit of Dr. Gary S. Deegear. In her affidavit, Webb testified that Baker told spa clients and personnel that Webb obtained the spa's Moringa from a local grocery store and not from India as advertised; that Webb used doctors with revoked licenses or operated the spa without doctors; that the supposed alkaline water sold by Webb was actually tap water; that Webb was being sued by two doctors; that Webb was a racist and a thief; and that Webb abused drugs. In his affidavit, Dr. Deegear testified that Baker told him in the presence of spa clients and potential clients that Webb bought the spa's Moringa in a local store and not in India as advertised; that Webb repackaged the Moringa and sold it at a much higher price; that Webb committed fraud; that Webb was a thief; that Webb used medical consultants

- 14 -

with revoked licenses; and that Webb used street drugs. Dr. Deegear further testified that Baker's statements to him and the others were "shocking revelations."

Additionally, Webb's evidence included a letter from G. Richard Keene and a statement from Shaun Lewis. In his letter, Keene stated that he heard Baker telling Shaun Lewis, a vendor who leased equipment to the spa, that she could not pay him because Webb had defrauded people for years. Keene also stated that Baker told Dr. Deegear and spa clients that Webb bought the spa's Moringa at the local grocery store and Webb did not travel to India to obtain the Moringa. According to Lewis's statement, Baker told him on May 18, 2018 that he would not be paid for April 2018 because Webb had operated the spa illegally for years and Dr. Deegear's medical license had been revoked.

Baker argues Webb did not produce clear and specific evidence of publication because she did not specifically identify the person or persons to whom the alleged defamatory statements were made. Under Texas law, false statements are published if they are communicated, either in writing or orally, "to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Rincon*, 520 S.W.3d at 579. Baker does not cite any authority for her argument that Webb was required to specifically identify the person or persons to whom the statements were made to provide prima facie proof of this element.

After considering her live pleadings and her evidence in the light most favorable to Webb, we conclude that she met her burden to establish by clear and specific evidence a prima facie case that the statements were communicated to a third person. Webb's live pleadings and her evidence show that the statements were communicated to "some third person," specifically, to "a salesperson," "clients," "potential clients," and "personnel." Webb's evidence further shows that some of the statements were communicated to two individuals identified by name, Shaun Lewis

and Dr. Deegear. We overrule Baker's complaints asserting a lack of clear and specific evidence of publication.[5]

### 2. Falsity of the Statements

Next, we address Baker's contention that Webb's pleadings and evidence are insufficient to establish that the remaining statements were false.

In her live pleadings, Webb identified each of the statements made by Baker and stated, "All of these statements that the defendant made were false." Webb further alleged in her live pleadings, that she "traveled to India to purchase the Moringa and that the water she sold as alkaline water was obtained separately and not just from the tap" as Baker claimed. Additionally, Webb alleged there was no illegality that affected her ability to pay vendors when she operated the spa, and the "spa was never cited nor closed by any agency or watchdog." Webb further alleged that the spa "had a medical director, Dr. Yuri Sless MD, with a medical license."

Webb's evidence also included Dr. Deegear's affidavit testimony stating that he was a retired medical doctor and "an educational medical consultant" who "helps [customers] in spa settings" "fine-tune their approach to healthy living." Dr. Deegear further testified that his "medical license was never 'revoked'" and he was "not part of any sham operations."[6]

After considering her live pleadings and evidence in the light most favorable to Webb, we conclude that she met her burden to establish by clear and specific evidence a prima facie case that

---

[5]Baker also argues that "the policy behind Defamation Mitigation Act" "underscores why Webb's failure to show publication requires dismissal under the TCPA." *See* TEX. CIV. PRAC. & REM. CODE §§ 73.051-.062. We disagree. The policy behind the Defamation Mitigation Act has no bearing on the issue before us, which is whether Webb met her burden to establish a prima facie case under the TCPA.

[6]Deegear's affidavit was signed before the Texas Medical Review Board's order discussed later in this opinion.

the statements in question were false. We overrule Baker's complaints asserting a lack of clear and specific evidence of falsity.[7]

***Element Four: Damages***

As to damages, Baker argues that Webb "has not, and cannot, provide evidence that she was actually damaged by the statements" alleged in her pleadings.

Defamation claims are divided into two categories: defamation per se and defamation per quod. *Hancock*, 400 S.W.3d at 63. Defamation per se refers to statements that are so obviously harmful that general damages are presumed to flow from the nature of the defamation itself. *In re Lipsky*, 460 S.W.3d at 596; *Hancock*, 400 S.W.3d at 63-64. A false statement of criminal conduct qualifies as defamation per se. *In re Lipsky*, 460 S.W.3d at 596. "Statements that injure a person in her office, profession, or occupation are typically classified as defamatory per se." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). "Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are [] deemed defamatory per se." *In re Lipsky*, 460 S.W.3d at 596. "To qualify as defamation per se under this category the disparaging words must affect the plaintiff in some manner that is peculiarly harmful to the plaintiff's trade, business, or profession and not merely upon the plaintiff's general characteristics." *Id*. "Defamation per quod is simply defamation that is not actionable per se." *Tatum*, 554 S.W.3d at 624.

Two of Webb's defamation claims are based on statements involving criminal conduct, specifically, that "Webb abuses street drugs" and that "Webb is a thief." Because these statements asserted that Webb engages in criminal conduct, they are defamatory per se. *See In re Lipsky*, 460

---

[7]Baker further argues the "Webb is a racist" statement is not actionable because it is a statement of opinion rather than fact. Because of our disposition of this statement later in this opinion, we need not address this argument.

S.W.3d at 596. Therefore, as to these two statements, damages are presumed, and Webb had no burden to produce clear and specific evidence of damages. *See id.*

Five of Webb's defamation claims are based on allegations involving statements that injure her in her profession. These statements concern the manner in which Webb operated the spa, namely, that Webb operated the spa illegally, that Webb allowed doctors to work in the spa with revoked licenses or operated the spa without doctors, that Webb did not obtain Moringa from India as advertised, and that Webb sold tap water as alkaline water. Because these statements stand to injure Webb in a manner that is peculiarly harmful to her trade, business, or profession, and adversely reflect on her fitness to conduct her business, they are defamatory per se and damages are presumed. *See Tatum*, 554 S.W.3d at 624; *In re Lipsky*, 460 S.W.3d at 596. Therefore, as to these statements, Webb had no burden to establish a prima facie case regarding damages.

The remaining statements, that "Webb is being sued by two physicians" and that she "is a racist," cannot be categorized as defamation per se, and therefore, they constitute defamation per quod. *See Tatum*, 554 S.W.3d at 624. Because these statements are categorized as defamation per quod, damages are not presumed, and Webb was required to produce clear and specific evidence of damages as to these statements. *See id.* To establish a prima facie case as to damages, "[d]irect evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). Nothing in Webb's live pleadings or her evidence allow a rational inference that some damages necessarily flowed from these statements. Therefore, as to these two statements, Webb failed to meet her burden to establish by clear and specific evidence a prima facie case regarding damages.

We conclude that the trial court erred by denying Baker's motion to dismiss as to the statements that Webb "is being sued by two physicians" and that she "is a racist." Webb was

required to produce clear and specific evidence of the damages flowing from these statements and she failed to do so. We further conclude that as to the remaining eight statements, Webb met her burden to establish by clear and specific evidence a prima facie case for each challenged element of defamation.

## SUBSTANTIAL TRUTH DEFENSE

The TCPA provides that even if the plaintiff establishes a prima facie case for each element of the claim in question, the trial court must dismiss the claim if the defendant establishes by a preponderance of the evidence each essential element of a valid defense to the claim. TEX. CIV. PRAC. & REM. CODE § 27.005(d).

On appeal, Baker argues the trial court should have granted her motion to dismiss because she established by a preponderance of the evidence the defense of substantial truth as to two sets of statements: the statements that "Webb abuses 'street drugs'" and "is a thief," and the statements that "a spa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom" and that "Webb was using doctors with licenses that were revoked." "Truth is a complete defense to defamation." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The defense of truth requires the defendant to prove that the statements were substantially true. *Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013).

The record shows that in the trial court Baker asserted the substantial truth defense as to the statements involving criminal conduct, that is, that Webb "is a thief" and that she "abuses 'street drugs.'" At the hearing on the motion to dismiss, Baker argued that Webb's live pleadings established the substantial truth of these statements. However, Webb's live pleadings state only that she had "a conviction of more than twenty[-]five years ago, the charges are not recent, [and] there was no use of drugs or thieving." Webb's live pleadings do not establish that Webb is presently engaged in any criminal activity. We conclude Baker did not satisfy her burden to

establish by a preponderance of the evidence the substantial truth of the statements that "Webb abuses 'street drugs'" and that she "is a thief." Therefore, the trial court did not err in denying the motion to dismiss as to these statements.

The record also shows that Baker asserted the substantial truth defense as to the statements that "a spa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom," and that "Webb was using doctors with licenses that were revoked." Baker filed a reply in support of her motion to dismiss, arguing that some of the statements were substantially true because a spa doctor did not have a license to practice medicine in Texas. Attached to Baker's reply was an order from the disciplinary panel of the Texas Medical Board showing that Gary Steven Deegear, M.D., worked as a spa doctor after his medical license was "cancelled." Specifically, the order contained findings that: (1) Gary Steven Deegear, M.D., was licensed to practice medicine in Texas on December 6, 1989, but his medical license was "cancelled on September 7, 2016, due to non-payment of renewal fees;" (2) that Deegear had worked at the "Mind, Body & Soul Fabulous Transformations Spa for two years, while representing himself as a licensed physician;" (3) that Deegear "[w]hile working at the [s]pa" "used unsafe practices [] such as" "giving injections in the bathroom." The order concluded that Deegear's "conduct, as described above, shows that [Deegear] has engaged in the unauthorized practice of medicine without a license and/or violated the Healing Art Identification Act." Additionally, the order directed Deegear to "cease and desist" from "engaging in any practice of medicine." We conclude Baker met her burden to establish by a preponderance of the evidence the defense of substantial truth as to the statements that "a spa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom" and that "Webb was using doctors with licenses that were revoked."

Because Baker satisfied her burden to establish the defense of substantial truth as to the statements that "a spa doctor had a 'revoked medical license' and was injecting patients in the spa

bathroom" and that "Webb was using doctors with licenses that were revoked," the trial court should have granted the motion to dismiss as to these statements.

## CONCLUSION

We conclude that the trial court erred by denying the motion to dismiss as to the statements that Webb "is being sued by two physicians" and "is a racist"[8] because Webb failed to present a prima facie case regarding damages. We further conclude the trial court erred by denying the motion to dismiss as to the statements that "a spa doctor had a 'revoked medical license' and was injecting patients in the spa bathroom," and that "Webb was using doctors with licenses that were revoked" because Baker established by a preponderance of the evidence the defense of substantial truth. Therefore, as to these four statements, we reverse the denial of the motion to dismiss and render judgment dismissing these defamation claims. As to Webb's remaining defamation claims, we affirm the denial of the motion to dismiss, and remand the case to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice

---

[8]As previously stated, we do not determine if this statement is otherwise actionable, that is, if it is a statement of opinion or fact.